IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Rahshaan Andrell Abrams, | ) | C/A No. 3:08-4073-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Wachovia Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Rahshaan Andrell Abrams ("Abrams"), filed this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII") against the defendant, Wachovia Corporation ("Wachovia"). Abrams, who is male, asserts claims of discrimination and harassment based on his gender. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Wachovia's motion for summary judgment (Docket Entry 22). Abrams filed a response in opposition (Docket Entry 23) and Wachovia filed a reply (Docket Entry 24). Having carefully considered the parties' submissions and the applicable law, the court concludes that Wachovia's motion should be granted.

**BACKGROUND**

Abrams began working for Wachovia in 2004 as a Financial Specialist. He was hired by Karen Swope Lambert and Demi Willingham, both females. As a Financial Specialist, Abrams was required, among other things, to meet specific monthly goals pertaining to new loans, deposits, and investments, and to provide guidance to customers in those areas. Additionally, he provided customer service on other issues. Abrams performed satisfactorily in this job until the end of 2005,

when his new supervisor, Mike Rider,[1] met with him regarding an "Initial Warning" for failing to meet performance standards. An Initial Warning is the first step in Wachovia's corrective action process. An Initial Warning may be followed by a Written Warning, Probation, and ultimately termination if the performance problem is not corrected.

As Abrams still failed to meet his monthly goals, Rider again met with Abrams regarding a Written Warning in January of 2006. Rider suggested that Abrams consider other positions within the company that did not include monthly production requirements, but Abrams stated that he wanted to continue to try to meet his goals. Rider lowered Abrams's monthly production goals to increase the likelihood that Abrams would meet them, and processed the Written Warning on January 18, 2006. The next day, Abrams inquired of Rider about an available position within the company as a Mortgage Performance Consultant. Rider gave him permission to apply for the position,[2] but Abrams was not selected, as the recruiting manager for that position determined that Abrams lacked the experience and skill level for that job. (Shane Aff. ¶ 6(a), Docket Entry 22-5 at 2.)

Abrams continued to have trouble meeting his monthly goals. After extending Abrams's Written Warning period, Rider ultimately placed Abrams on Probation. During this time frame, Abrams applied for other positions at Wachovia—Loan Processing Coordinator, Worksite Sales

---

[1] Rider took over Willingham's position and reported directly to Lambert. Lambert's maiden name is Swope, and the record contains references to her by both names.

[2] Although Abrams argues employees were not permitted to apply for other positions at Wachovia after receiving a Written Warning, Wachovia has presented evidence from supervisors within the organization that employees who had received Written Warnings or who were on Probation could apply for other positions with their supervisor's permission. (Rider Aff. ¶ 23, Docket Entry 22-4; Shane Aff. ¶ 4, Docket Entry 22-5.) Moreover, Abrams does not dispute that he applied for other positions with Rider's approval.

PJG

Consultant, Business Systems Analyst, and WM Sales/Investment Management Assistant—but was not selected for them. None of these positions apparently would have involved a decrease in pay for Abrams. Rider again suggested that Abrams apply for positions as Teller, Service Transaction Specialist (STS), or Service Banker, but Abrams did not want to take a "step back" into those positions. (Pl. Dep. at 213-14, Docket Entry 22-3 at 57-58.) According to Abrams, Rider "harassed" him daily for failing to meet his goals by inquiring if Abrams had found another position yet outside of Wachovia. In June of 2006, Abrams resigned to take a position with a mortgage company.

The parties appear to agree that in late 2005 several female Financial Specialists, including Leah King, Diana Hinson, and Donna Mullins, were also experiencing difficulty meeting their monthly goals. Two of these women—King and Hinson—applied for and were selected for other positions at Wachovia—Administrative Assistant and "Roving" Service Banker, respectively—after being counseled by Rider about their lagging performance. The third, Ms. Mullins, transferred to an STS position before even receiving an Initial Warning. Abrams contends that a fourth female Financial Specialist, Stephanie Smith, was also given another job within Wachovia.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or non-

Page 3 of 16
PJG

existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. The Reeves Court stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Reeves, 530 U.S. at 148. The Court of Appeals for the Fourth Circuit has stated that the Reeves Court instructs more broadly regarding the factors "on which the appropriateness of a judgment as a matter of law will depend in any case and will include 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employers' case and that properly may be considered on a motion for judgment as a matter of law.' " Dennis, 290 F.3d at 649 (quoting Reeves, 530 U.S. at 148-49).

**B.     Burden Shifting in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's

affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 301 F.3d at 294-95.

**C. Abrams's Claims**

**1. Disparate Treatment**

To establish a prima facie case of disparate treatment,[3] a plaintiff must show that (1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) he was

---

[3] Abrams argues that the court should analyze his case as one involving disparate treatment with regard to disciplinary action. (See Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., Docket Entry 23 at 6-7.) Under this analysis, Abrams must show: (1) that he engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin; and (2) that disciplinary measures enforced against him were more severe than those enforced against the other person. Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008). However, even assuming that this analysis would apply under the circumstances of this case, Abrams cannot make this showing for the reasons discussed below.

performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) his position was filled by a similarly qualified individual outside the protected class or similarly situated employees outside of his class were treated more favorably.[4] See King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995); Luy v. Baltimore Police Dep't, 326 F. Supp. 2d 682, 688 (D. Md. 2004). Abrams cannot make this showing on the record presented.

Abrams does not dispute that he failed to meet his monthly goals for several months running. He asserts, however, that Wachovia's expectations in this regard were unrealistic, arguing that a downturn in the economy and the fact that he had to spend much of his time tending to customer service issues prevented him from meeting his production requirements. Even accepting Abrams's assertions in this regard as true, however, this argument does not avail him. An employer's expectations of its employees are "legitimate" within the meaning of the *prima facie* case for discrimination when they are honestly held; whether the employee agrees with those expectations is not the test. Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations").[5] In this context, the term "legitimate" means that expectations cannot be a " 'sham designed to hide the employer's discriminatory purpose.' " Warch, 435 F.3d at 518 (quoting Brummet v. Lee Enterprises, Inc., 284 F.3d 742, 745 (7th Cir. 2002)). As long as the requirements imposed are bona fide expectations, it is not the

---

[4] The court observes that the fourth prong of this test is a fluid one that often depends on the facts of the case presented. See McDonnell Douglas, 411 U.S. at 802 n.13.

[5] Some courts within the Second Circuit have recognized that Thornley's holding is limited to cases where meeting an employer's legitimate expectations is a requirement of the applicable *prima facie* case.

PJG

court's province to determine whether an employer demands too much of its workers. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) (Posner, J.).

Here, Abrams has presented absolutely no evidence from which a reasonable jury could find that Wachovia's expectations regarding his monthly goals were a sham. Indeed, Wachovia imposed performance requirements on all of its Financial Specialists,[6] many of whom had no trouble meeting their goals. Abrams does not dispute that Rider actually lowered his monthly goals to assist Abrams in meeting his production requirements. As Abrams does not dispute that he repeatedly failed to meet his production requirements, he cannot meet the third element of the *prima facie* case.

Nor can Abrams show that he suffered adverse employment action.[7] Although Abrams argues that he was constructively discharged, again no evidence in the record supports this. To establish that he was constructively discharged, a plaintiff must show that his employer created intolerable working conditions in a deliberate effort to force him to resign. Whitten v. Fred's, Inc., 601 F.3d 231 (2010); Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995). A constructive discharge occurs only when a reasonable person in the employee's position would have felt compelled to resign. See Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004). "An employee is protected from a calculated effort to pressure him into resignation though the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985).

---

[6] Although Abrams makes the conclusory assertion that the monthly production requirements for his female colleagues were lower than his, he presents absolutely no evidence to support this. By contrast, Wachovia has presented evidence demonstrating that at least one of King's and Hinson's requirements—that for deposits—was higher than Abrams's. (Compare Docket Entry 24-2 at 2-3 with Docket Entry 22-2 at 27.)

[7] Abrams does not argue that the Initial Warning, Written Warning, or Probation constituted adverse employment action.



Here, Abrams argues in support of his constructive discharge argument that he knew he was going to be fired, which would hurt his chances of finding employment elsewhere, so he quit rather than wait to be terminated. (Pl's Resp. Opp'n Def.'s Mot. Summ. J., Docket Entry 23 at 10.) This is insufficient to constitute a constructive discharge as a matter of law. See Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004) (finding that allegations that supervisors yelled at the plaintiff, gave her poor evaluations, told her she was an incompetent manager, criticized her in front of customers, and once insisted that she work with an injury, even if true, fail to establish constructive discharge); Burns v. AAF-McQuay, Inc., 96 F.3d 728, 733-34 (4th Cir. 1996) (finding the plaintiff failed to present sufficient evidence of constructive discharge where her former supervisor demoted her, harassed and criticized her, and inexplicably threatened to fire her); Alba v. Merrill Lynch & Co., 198 Fed. Appx. 288, 294-95 (4th Cir. 2006) (unpublished) (finding the plaintiff failed to present sufficient evidence of intolerable working conditions where the employer forced the plaintiff's son to resign, threatened the plaintiff with loss of certain benefits if he refused to retire, told some of the plaintiff's coworkers that he was going to be terminated, and disconnected the plaintiff's access to the employer's computer system). Similarly, the denial of the promotions he applied for cannot support a claim of constructive discharge. See Bristow, 770 F.2d at 1256 n.4. Nor has Abrams presented any evidence that his working conditions were unreasonably harsh and in excess of those faced by his co-workers. Cf. Munday v. Waste Mgmt. of North America, Inc., 126 F.3d 239, 245-46 (4th Cir. 1997) (finding an employer imposed unreasonably harsh conditions in excess of those face by the plaintiff's co-workers where the supervisor instructed the plaintiff's co-workers to have as little contact with her as possible, to spy on her, to report her activities and comments, and to watch for every "slip" that she made) (citing Bristow, 770 F.2d at 1255).

Finally, Abrams cannot meet the fourth element of his *prima facie* case, as the record does not support his contention that the female employees upon which he relies to show disparate treatment were treated more favorably.[8]  Although Abrams rests his claims upon the fact that female Financial Specialists who were also failing to meet production requirements were found other jobs within the company, the evidence in the record belies his assertion that they were treated more favorably.  Wachovia has introduced evidence, which Abrams has not refuted, showing that Abrams declined to apply for the positions into which Hinson and Mullins ultimately transferred.  Additionally, Abrams acknowledged that he was aware of the availability of the Administrative Assistant position ultimately awarded to King, but did not apply because he did not possess a securities license, which was a requirement for the position.  Because Abrams failed to avail himself of opportunities that were equally open to him and his female colleagues and chose to apply only for positions that he did not consider to be a demotion or that offered a higher salary, he cannot show that the females were treated more favorably.  See Shields v. Federal Express Corp., 120 Fed. Appx. 956, 964 (4th Cir. 2005) (unpublished) ("All three were deficient in their job performances as managers and each was given the same chance to accept a demotion in order to avoid further disciplinary action.  In other words, they were each treated the same.  The fact that the Caucasian managers chose the demotions and [the plaintiff] chose a challenge he would eventually lose does not show at all [disparate treatment]."); Johnson v. Wheeling-Pittsburgh Steel Corp., 279 Fed. Appx.

---

[8] The court assumes without deciding that King, Hinson, and Mullins were similarly situated to Abrams.  See Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (defining "similarly situated").  Although Wachovia disputes this, the court need not address this issue since, as discussed below, Abrams cannot show that his proffered comparators were treated more favorably.  The court further observes that although Abrams also mentions Stephanie Smith as having transferred into another position at Wachovia, the court finds that she is not a valid comparator in this case, since it is undisputed that Smith had no trouble meeting her performance requirements.  (See Def's Reply to Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., Docket Entry 24 at 10-11.)

200, 207 (4th Cir. 2008) (unpublished) (finding that the plaintiff failed to establish a *prima facie* case where he did not bid or attempt to bid on the jobs at issue); Burns v. Georgia-Pacific Customer Prods., LP, C/A No. 4:07-4100-TLW-TER, 2009 WL 3048564 at *5-6 (D.S.C. Sept. 18, 2009) (unpublished) (finding no *prima facie* case of disparate treatment where the plaintiff failed to apply for open positions).

Analyzing this matter under a disparate discipline *prima facie* case, Abrams would have the court focus on the similarity of the "offenses" between him and the female comparators rather than whether they were similarly situated. As noted above, the analysis requires Abrams to show: (1) that he engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin; and (2) that disciplinary measures enforced against him were more severe than those enforced against the other person. Lightner, 545 F.3d at 264-65. Again assuming without deciding that Hinson, Mullins, and King are valid comparators, for the same reasons Abrams cannot show that the female comparators were treated more favorably, he cannot show that the disciplinary measures enforced against him were more severe. He has presented no evidence that Hinson, King, and Mullins would not have ultimately suffered disciplinary action had they made the same career choices as Abrams upon their initial meetings with Rider regarding their performance problems.

**2. Harassment**

To establish a *prima facie* case of harassment based on gender, a plaintiff must show: (1) he was harassed because of his sex; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772 (4th Cir. 1997); Wrightson v. Pizza Hut of America, Inc., 99 F.3d 138, 142 (4th Cir. 1996). Abrams has failed to present evidence establishing three of these elements.

To meet the first element, an employee must show that "but for" his gender, he would not have been a victim of harassment. Wrightson, 99 F.3d at 142; Hartsell, 123 F.3d at 772. Here, Abrams alleges that Rider "harassed" him by asking him about his productivity and inquiring as to whether he had found another job. (Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., Docket Entry 23 at 20-21; Compl. ¶ 29, Docket Entry 1 at 6.) Thus, the only evidence presented shows that the alleged harassment stemmed from Rider's continuing to hold Abrams responsible for meeting his production requirements and not from Abrams's gender. See In re Leslie Fay Cos., Inc., 212 B.R. 747, 790-91 (Bankr. S.D.N.Y. 1997) (holding that disagreements with supervisors over job performance rather than gender-based harassment was not protected under Title VII).

Moreover, even accepting Abrams's characterization of Rider's behavior as true, such conduct does not rise to the standard of being "severe" and "pervasive" so as to create an abusive working environment. When analyzing this element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996). Here, Abrams bases his claim merely on Rider's inquiries about his productivity, Rider's alleged failure to assist him in improving, and Rider's inquiries about whether he had obtained another position. (Pl's Dep. at 260-61, 264, 301-303; Docket Entry 23-9 at 260-61, 264, 301-303.) Moreover, despite Abram's characterization in his brief of Rider's inquiries as "constant," his deposition testimony shows that his contact with Rider during the relevant time frame was limited to telephone conversations once or twice a week and in-person contact approximately once a month. (Pl.'s Dep. at 144, 145-46; Docket Entry 22-3 at 20, 21-22.) No reasonable jury

could find that such conduct constitutes the serious, pervasive, abusive harassment required to establish a Title VII claim. Compare E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009) (finding alleged gender-based and race-based harassment was sufficiently severe or pervasive where co-workers referred to women as b***hes and a co-worker in a cubicle next to the plaintiff had Playboy items, watched pornography in front of her, had a pornographic screensaver, and placed a screwdriver in a Halloween decoration in a sexual manner and where co-workers used racial epithets, some directed at the plaintiff, and two co-workers "kept blue-colored mop-head dolls in their offices which they had hanging by nooses tied around the dolls' necks") and Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001) (holding that supervisor's constant, even daily, use of racial epithets was sufficiently severe or pervasive to survive summary judgment) and Smith v. First Union National Bank, 202 F.3d 234 (4th Cir. 2000) (concluding that "a barrage of threats and gender-based insults" that the plaintiff's supervisor directed at her and that occurred more than thirty times in the first few weeks of the plaintiff's employment was sufficiently severe or pervasive to survive summary judgment) and Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995) (finding the alleged harassment was sufficiently severe or pervasive because an Iranian plaintiff was called "names like 'the local terrorist,' a 'camel jockey' and 'the Emir of Waldorf' " on an almost daily basis) with McNeal v. Montgomery County, Md., 307 Fed. Appx. 766, 776 (4th Cir. 2009) (unpublished) (stating that "five accusations of theft and [the supervisor's] requirement that [the plaintiff] bring in doctor's notes and provide for more detail about his sick leave hardly rise to the level of 'hostile or abusive' treatment") and Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745 (4th Cir. 1996) (acknowledging that the conduct and sexual comments at issue were "inappropriately forward," but finding the alleged harassment was insufficiently severe or pervasive where the conduct occurred over several years, most sexual comments and conduct occurred in group

PJG

settings, and the supervisor never "made an overt sexual proposition or touched [the plaintiff] in a sexual manner"). Here, even accepted as true, Rider's alleged conduct is neither sufficiently severe nor pervasive nor abusive to establish the required third element of the *prima facie* case.

Finally, even if Rider's conduct rose to the level of serious, pervasive, abusive and gender-based harassment required to establish a claim, liability could not be imputed to Wachovia. First, as discussed above, Abrams's allegations of constructive discharge fail. See Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) (providing for an affirmative defense for an employer to avoid strict liability for unlawful harassment by a supervisor where no tangible employment action culminates); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998) (same). With no tangible employment action, Wachovia avoids liability by showing that it exercised reasonable care to prevent harassment and that Abrams unreasonably failed to take advantage of any preventative or corrective opportunities that it provided or to otherwise avoid harm. See Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765 (discussing affirmative defenses to gender-based harassment claims). Here, Abrams does not dispute that Wachovia has in place a policy prohibiting gender-based harassment with a reporting process for such claims and that he never reported any harassment by Rider in accordance with the policy. Accordingly, he cannot establish the fourth required element or rebut Wachovia's evidence supporting its affirmative defense.

# RECOMMENDATION

Abrams cannot establish a *prima facie* case of gender discrimination, and his harassment claim also fails as a matter of law. Accordingly, the court recommends that the defendant's motion for summary judgment (Docket Entry 22) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 3, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).