IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Rahshaan Andrell Abrams, | ) | C/A No.: 3:08-4073-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Wachovia Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Through this action, plaintiff Rahshaan Andrell Abrams ("Abrams") seeks to recover damages against his former employer, defendant Wachovia Corporation ("Wachovia"), for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. This matter is before the court for review of the Magistrate Judge's report and recommendation (the "Report") on Wachovia's motion for summary judgment (Dkt. No. 22) made in accordance with 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g) (D.S.C.).

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

Wallace v. Housing Auth. of the City of Columbia, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted). The Report recommends granting Wachovia's motion for summary judgment. In response, Abrams has lodged a number of objections. (Dkt. No. 28.) After reviewing the parties' briefs, the record, the Report, and the objections, the court hereby overrules Abrams's objections, adopts the Report in full, and grants Wachovia's motion for summary judgment.

I. Background

Abrams commenced employment as a Financial Specialist with Wachovia in May 2004, and labored uneventfully for eighteen months thereafter. Beginning in December 2005, Abrams began to experience trouble meeting his performance goals. Abrams was issued an initial warning for failing to perform and his new supervisor, Mike Rider, met with him to discuss Wachovia's corrective action process. As its name implies, an initial warning is the first step in a process designed to address performance issues; the process escalates in severity from the initial warning to a written warning, probation, and ultimately termination. During early 2006, Abrams continued to encounter difficulty in reaching his performance goals and was issued a written warning. At a January 2006, meeting to discuss the written warning, Rider suggested to Abrams that he consider other positions at Wachovia that did not require meeting monthly performance goals, but Abrams determined to remain as a Financial Specialist and attempt to satisfy his goals. In a concession to Abrams, Rider lowered Abrams's goals to increase the likelihood of reaching them.

Abrams persisted in his failure to meet performance goals and Rider eventually placed Abrams on probation after extending the written warning period. While on probation, Abrams applied to, but was not selected for, a number of other jobs with a comparable salary to Financial Specialist at Wachovia. When Rider suggested that Abrams apply for a position as a Teller, Service Transaction Specialist, or Service Banker, Abrams rebuffed his suggestion, indicating that he did not want to take "a step back." (Abrams Dep. 213:25–, 214:5; 251:25.)

In late 2005, Leah King, Diana Hinson, and Donna Mullins, each a Financial Specialist, were also having trouble meeting their performance goals. King and Hinson received counseling for their underwhelming performances, and thereafter applied for and were accepted to positions as Administrative Assistant and Service Banker, respectively. Mullins transferred to a Service Transaction Specialist position before receiving any official action.

Abrams contends that his supervisors harassed him about his performance because he is male. He also asserts that similarly situated female Financial Specialists received preferential treatment in the form of lower goals, supervisory assistance in meeting goals, and opportunities to move to other positions at Wachovia denied him. Through harassing him about performance goals and showing preferential treatment to similarly situated female financial specialists, Abrams contends that Wachovia created and fostered a hostile work environment and that he was constructively discharged. In his complaint, Abrams asserts

3

claims of sex discrimination and harassment, both pursuant to Title VII.

II.     Discussion

Title VII makes it unlawful to for an employer to discriminate against an employee on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, a plaintiff may pursue a Title VII case under the burden-shifting framework provided in McDonnell Douglas v. Green, 411 U.S. 792 (1973). The initial burden under McDonnell Douglas falls to the plaintiff and requires that he establish a prima facie case. Id. After the initial showing is made, "[t]he burden of production then shifts to the employer to articulate a legitimate non-discriminatory justification for its allegedly discriminatory action." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 295 (4th Cir. 2010). If the employer meets its burden, the plaintiff "then has the opportunity to prove by a preponderance of the evidence that the neutral reasons offered by the employer 'were not its true reasons, but were a pretext for discrimination.'" Id. (quoting Tex. Dep't Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981)).

A.     Title VII Disparate Treatment

To make out a prima facie case of disparate treatment a plaintiff must show that (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. See Holland v. Washington Homes,

4

Inc., 487 F.3d 208, 214 (4th Cir. 2007).

The Report found that Abrams failed to establish a prima facie case of disparate treatment. Specifically, the Report found that Abrams was not subjected to an adverse employment action and was not performing his job duties at a level that met his employer's legitimate expectations. The Report also found that Abrams could not establish that his female comparators were treated more favorably.

1. Abrams's Objections

Abrams's objects, rather generally, to the Reports finding that he has failed to establish a prima facie case. Despite some reservation about the adequacy of the objections themselves, the court will nonetheless address the specific points of disagreement between Abrams's objection memorandum and the Report. The objections germane to the disparate treatment claim are as follows: Abrams asserts that (1) he was subjected to an adverse employment actions in the form of written reprimands and constructive discharge; (2) Wachovia's expectations lacked legitimacy and cannot serve as a benchmark to gage its satisfaction with his performance; and (3) the female comparators were in fact treated preferentially.

i. Adverse Employment Action

Abrams objects to the report's finding that he failed to experience an adverse employment action. He asserts that the written reprimands he received constitute adverse employment actions because they impeded his ability to advance within Wachovia. Abrams

5

also asserts that he was constructively discharged. With regard to the written reprimands—Abrams failed to argue that these constituted adverse employment actions in his response to Wachovia's motion for summary judgment and his assertion that these constituted adverse employment actions are tardy and have deprived the court of proper briefing. Nonetheless, the court will address Abrams's contention. See United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992) ("We believe that as part of its obligation to determine de novo any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate.").

An employment action is adverse for the purposes of a Title VII disparate treatment claim if it affects "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." Page v. Bolger, 645 F.2d 227 (4th Cir. 227). Abrams does not contend that the warnings issued to him affected his hiring, being granted leave, or his compensation. Nor was Abrams fired (a discussion of constructive discharge will follow below). Here, after Abrams was issued a written warning, he needed supervisor permission to apply for other jobs, which arguably impacts his ability to be promoted. However, the uncontroverted facts of this case demonstrate that Abrams was granted permission to apply to any job he sought; the record also shows that Rider sent a letter of recommendation on his behalf. (Abrams Dep. 328:12–13; Rider Aff. ¶¶ 23, 24, 38–43.) The warnings, though potentially bearing on ultimate employment decisions because of their effect on

6

advancement, did not operate to prevent Abrams from seeking advancement in this case. Because the written warnings and probationary status did not affect any ultimate employment decision, they did not constitute an adverse employment action. Even if the warnings did constitute adverse employment actions Abrams markedly dilutes their salience to this case with the statement: "Well, the written warnings were [Rider] doing his job." (Abrams Dep. 261:1–2.) Abrams's statement that Karen Swope "may have" directed Rider to issue written warnings does little to revive their significance as this belief is completely unsupported in the record.

Abrams asserts that Wachovia constructively discharged him. Constructive discharge constitutes an adverse employment action. To support this element, Abrams must show deliberate action on the part of Wachovia as well as objectively intolerable working conditions such that a "reasonable person would have felt compelled to resign." Blistein v. St. John's College, 74 F.3d 1459, 1468 (4th Cir. 1996) overruled in part on other grounds, Oubre v. Entergy Operations, Inc., 522 U.S. 422, (1998); see also Williams v. Giant Food, Inc., 370 F.3d 423 (4th Cir. 2004) (finding that supervisors yelling at employee, issuing poor evaluations, chastising her in front of customers, and requiring her to work with an injured back did not effect a constructive discharge). This is because "[t]he doctrine of constructive discharge protects an employee 'from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers.'" Id. (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir.

7

1985)). "Where, however, all employees are treated identically, no particular employee can claim that difficult working conditions signify the employer's intent to force that individual to resign." Bristow, 770 F.2d at 1255. Stated more emphatically: "The employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred. They cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting." Id. The court also notes that generally, a feeling of being unfairly criticized is not so intolerable as to compel a reasonable person to resign. Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994).

The conditions Abrams represents as objectively intolerable consist solely of his being cited "month after month" (Abrams Dep. 260:1) for underperformance and the fact that several of his female comparators were allowed to transfer to other positions in the company. Such allegations do not suffice to establish constructive discharge in the Fourth Circuit.

Taking Abrams at his word, the reason he took another job was because he thought his job was in jeopardy and that he didn't have long to find other employment before being fired. (Id. at 204:14–22.) The record reflects that he had little issue with the working environment, quite the contrary—Abrams described his time at Wachovia as a great working experience. (Id. at 210:19.) Furthermore, Abrams indicated that he would have had no problem working two additional weeks at Wachovia had training for his next job not commenced as early as it did. (Id. at 239:16.) These facts, Abrams's voluntary departure to take another job (Id. at 228:23–24), and his own subjective characterization that he had a

8

great working experience at Wachovia and was willing to work there longer (Id. at 237:1–18), combine to preclude any finding of objective intolerability.

More fundamentally, however, the record indicates that Abrams was not treated any differently from his coworkers. Each of his female comparators faced similar production requirements that each failed to meet. When Rider confronted the comparators and Abrams about their individual failures he suggested a transfer to a different job within Wachovia. The jobs Rider mentioned where dismissed by Abrams as a step back; each female comparator willingly transferred. Abrams cannot establish that he was treated any differently than his female comparators. He continued to receive citations because he determined to remain in a stressful position that required meeting goals. His female comparators avoided citation by transferring to less stressful positions Abrams conceived of as demotions.

Abrams has failed to demonstrate objective intolerability or that he was treated differently than other employees at Wachovia. Where "all employees are treated identically, no particular employee can claim that difficult working conditions signify the employer's intent to force that individual to resign." Bristow, 770 F.2d 1251 (4th Cir. 1985).

      ii.  Satisfaction of Wachovia's Legitimate Expectations

Abrams cannot establish that any of Wachovia's actions effected an adverse employment action, but even if he could, he could not show that he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action. An essential element to establishing a prima facie case of disparate

9

treatment is a showing that an employee is performing at a level that meets the employers legitimate expectations. See King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). Abrams does not dispute that he failed to meet Wachovia's goals. (Abrams Dep. 179:13–15.) And the record reflects that he was only one of three who could not meet his goals out of twenty Wachovia Financial Specialists under Rider. (Rider Aff. ¶¶ 4, 11.) Instead, he asserts that Wachovia's goals were not legitimate because they were not applied evenhandedly across the sexes. Abrams is correct to the extent that he asserts that the goals were not applied identically between him and his comparators—King and Hinson both faced more demanding production goals. (Abrams Dep. Exs. 8, 11 ($550,000 and $650,000 for King and Hinson, respectively, versus $450,000 for Abrams).) At bottom, Abrams fails to offer any support for his argument that Wachovia's uniform policy of setting goals for Financial Specialists, and holding them responsible for meeting them, in actuality constitutes an elaborate rouse to force him to take a job elsewhere. All evidence is to the contrary—Abrams has failed to put forth any evidence tending to support his argument that Wachovia's goals were not legitimate and honestly held.

The problem with Abrams objection to the Report's finding on this issue is that it misses the point of this element. Abrams's argument goes to his assertion that employees received disparate treatment based on sex when they failed to meet goals. Abrams makes no real argument that the goals themselves were illegitimate; only baldly alleging that they were a sham designed to force his resignation. No evidence in the record supports this position

and it is countered by the success of the 17 of 20 Financial Specialists who met their goals. The record is replete with the efforts of Wachovia to transfer the less successful Financial Specialists to less demanding jobs. Wachovia's efforts o convince Abrams to take a less demanding position were not as successful as they were with his female comparators. Accordingly, the court finds that while possibly misplaced in Abrams, Wachovia's expectation that Financial Specialists hit their goals was legitimate and honestly held.

Because the court finds that Abrams cannot establish a prima facie case of disparate treatment for at least two dispositive reasons—no adverse action and failure to meet expectations—its analysis of this claim will end here. Abrams's disparate treatment claim is therefore dismissed with prejudice.

B.     Title VII Disparate Discipline

Abrams insists that the Title VII disparate discipline analysis applies to the facts of this case. However, this is not a disparate discipline case—Abrams underperformed, he did not misconduct himself. See, e.g., McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273 (1976) (applying the disparate discipline framework to crimes, prohibited conduct, or serious misconduct); Featherstone v. U.P. Serv's, Inc., 56 F.3d 61 (4th Cir. 1995) (same); Moore v. City of Charlotte, 754 F.2d 1100 (4th Cir. 1985) (same); Forrest v. Transit Mgmt., 245 Fed. App'x 255, 256 (4th Cir. August 15, 2007) (same). Accordingly, the court finds Abrams disparate discipline claim does not fit the facts of this case and hereby dismisses it with prejudice.

C. Title VII Harassment

Abrams asserts a claim of gender-based harassment under Title VII. A prima facie case of harassment based on gender requires a plaintiff to show that (1) he was harassed because of his sex; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. EEOC v. Fairbrook Medical Clinic, P.A., __ F.3d __, No. 09-1610, 2010 WL 2432734, at *5 (4th Cir. June 18, 2010). "For sexual harassment to be actionable, is must be sufficiently severe or pervasive "to alter the conditions of the victim's employment and create an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57 (1986). "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale v. Sundowner Offshore Serv's, Inc., 523 U.S. 75, 80 (1998). The Report found that Abrams failed to established a prima facie case of harassment for want of causation and evidence of severe and pervasive conduct, and the absence of a basis for imputing liability to the Wachovia.

1. Abrams's Objections

Abrams objects to each of the Report's conclusions concerning his prima facie case of harassment. Abrams contends that the months of ridicule and prodding about his numbers constitutes gender harassment. He takes issue with the fact that he was repeatedly called into meetings to explain his numbers and left feeling like he was on the brink of termination.

12

Worst of all, according to Abrams, was Rider's inquest as to whether Abrams had found a job elsewhere.

### i. Severity and Pervasive Harassment

The court agrees with the magistrate judge's report as to each finding on this claim. Careful review of Abram's deposition transcript reveals that he faced challenge from Rider on his numbers at most weekly, and only in person on a monthly basis. Abrams also makes no allegation that gender-specific subject matter was ever at issue. The question here is whether a supervisor who makes weekly demands on an employee to become more productive constitutes Title VII harassment, where that employee has refused to accept a less demanding job and where all of his female comparators have. The court has considered all of the circumstances and finds as a matter of law that such conduct is not severe or pervasive enough to constitute a hostile work environment under Title VII. See Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993). That is to say that no reasonable person could find such a workplace abusive or hostile.

### ii. Causation

Even if the Wachovia supervisors' conduct was severe and pervasive, there is no evidence in the record to support the position that Abrams was called to account for his performance because he was male. In addition to Abrams, Rider requested meetings with two of Abrams's female counterparts who thereafter elected to decamp to less stressful positions. In Abrams's meeting with Rider, they discussed Abrams taking a "step back," but

Abrams determined to remain as a Financial Specialist where he continued to faced criticism from Rider to the extent that he failed to meet his production goals. The only possible inference flowing from the record, as the court must view it, is that Abrams continued to be questioned about his performance because he was the only underperforming Financial Specialist who refused to take a less demanding, or goal oriented, job. Accordingly, the court finds that Abrams cannot show that he was repeatedly questioned about his performance because of his sex.

III.  Conclusion

The court finds that Abrams cannot establish a prima facie case of disparate treatment because he failed to experience an adverse employment action or satisfy his employer's expectations, nor can Abrams establish a prima facie case of harassment—Abrams cannot show that the conduct in question was because of his gender or sufficiently severe or pervasive to come under Title VII. Accordingly, the court hereby overrules Abrams's objections, adopts the Report in full, and grants summary judgment (Dkt. No. 22) for Wachovia.

IT IS SO ORDERED.

June 25, 2010　　　　　　　　　　　　　　Joseph F. Anderson, Jr.
Columbia, South Carolina　　　　　　　　United States District Judge